IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Brian Brandt,<br><br>Plaintiff,<br><br>v.<br><br>Wayfair, LLC, Angi, Inc., and Unknown Contractors of Wayfair, LLC and Angi, Inc.,<br><br>Defendants. | ) | No. 25 C 9399 |

Memorandum Opinion and Order

Plaintiff Brian Brandt ordered furnishings from defendant Wayfair, LLC, to be installed by as-yet unknown contractors (also defendants) from defendant Angi, Inc., which partners with Wayfair to provide this service. Defendants' goods and installation were defective, resulting in a bathroom-based catastrophe for Brandt and his apartment. He filed suit and before me are Wayfair and Angi's motions to dismiss. I grant those motions in part.

# I.

Wayfair is a largely-online retailer of affordable home goods, specializing in shipped and customer-assembled flat-pack furniture. Angi, formerly Angi's List, is functionally a referral service which connects customers with handymen and women which it has purportedly vetted for quality. Wayfair has partnered with Angi such that a customer checking out on Wayfair's website can purchase assembly and installation of their home goods through Angi.[1]

---

[1] "Angi: How It Works," Wayfair (visited Aug. 13, 2026), https://www.wayfair.com/service/handy. As the site reads:

> 1. Pay a fixed price for your Angi assembly or installation at Checkout.
>
> 2. Schedule a service appointment that works best for your schedule in Checkout. You'll receive an email from Angi confirming the time.
>
> 3. Your fully-equipped, background-checked professional will arrive and complete your service to perfection.
>
> ...
>
> FAQ
>
> **What is included in my Angi service?**
>
> For a flat fee, you'll receive professional assembly or installation service from an experienced, background-checked professional.
>
> ...
>
> **What if I have an issue with my pro service?**

In April 2023, Brandt ordered a light fixture, vanity stand, and toilet from Wayfair. Brandt is disabled in some unspecified way which increases his risk of falling, and for that reason he ordered installation service from Angi through Wayfair.[2] He also apparently ordered painting service from Angi, although he bought the paint to be used on his own.

Brandt's complaint is very long and very detailed, but the gist of what happened is that the installation did not go well. The various handymen dispatched by Angi damaged Brandt's bathroom as they were installing what he had bought, the original vanity Wayfair sent him was defective, and the toilet, as originally installed, leaked and stunk. Over the course of late April, May, and June 2023, Brandt found himself in a labyrinth of live chats and email chains with customer service at both Wayfair and Angi, representatives of which promised him that his problems would be remedied in different ways at different times. More handymen

---

> If your Pro...provides unsatisfactory service, please contact Angi via live chat. They'll work to make it right.

*Id.* (all orthography as in original).

[2] Brandt alleges that he ordered the items on April 16 and then writes that he ordered both the items and installation on April 22. It is unclear how the items and services were divided up between the orders.

trooped into and out of Brandt's home, most of whom only aggravated the state of his commode. Through those two months, Brandt was forced to find alternative bathroom arrangements and was plagued by liquids and stenches emanating, and sometimes erupting, from the mis-installed toilet. Brandt sustained several falls, some of which sent him to the hospital, due to the effluent making its way into his apartment.

Defendants eventually remedied the leak in Brandt's bathroom, but they did not agree to remediate the damage to the rest of the apartment to his satisfaction. He filed suit and frames his grievances in five counts: (I) breach of contract; (II) negligence; (III) violation of the Illinois Home Repair and Restoration Act; (IV) intentional infliction of emotional distress; and (V) willful and wanton misconduct. [3] Counts IV and V he pleads only against

[3] Brandt is a citizen of Illinois and originally filed this suit in Illinois state court. Angi removed the case, asserting diversity jurisdiction. ECF 1. I noted that while Angi had established its citizenship in Delaware and Colorado, it had insufficiently made out Wayfair's citizenship and directed Angi to file a jurisdictional statement. ECF 21. Angi did so, clarifying that Wayfair is a Massachusetts limited liability company whose only member is a Massachusetts corporation. ECF 22. Brandt had also originally sued "Handyman," an Illinois company, but dismissed that defendant from the suit while it was still in Illinois circuit court. ECF 22-1 at 61. Brandt has asserted that he wishes to proceed against various contractors sent to his apartment by Angi and Wayfair once he discovers their names. In the event that those contractors are domiciled in Illinois, their inclusion would pose a problem for diversity

Angi and Wayfair; the remainder he pleads against the two companies and the as yet unidentified handymen who allegedly harmed him. Angi and Wayfair have now moved to dismiss the complaint as to them under Federal Rule of Civil Procedure 12(b)(6).

**II.**

In deciding a motion to dismiss for failure to state a claim, I read the complaint in the light most favorable to the plaintiff, accept well-pled facts as true, and draw all inferences in the plaintiff's favor. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008). A claim must be plausible rather than merely conceivable or speculative, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007), meaning that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404–05 (7th Cir. 2010). But the proper question to ask is still "*could* these things have happened, not *did* they happen." *Id.* The purpose of these broad pleading requirements is to put the defendant sufficiently on notice of the plaintiff's claims such that the defendant can

---

jurisdiction. *See Webster v. Black & Decker, Inc.*, 2005 WL 3307506, at *2 (W.D. Wis. Dec. 6, 2005).

prepare a defense. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

**III.**

**A. Breach of Contract**

The parties agree that Illinois law applies to each of Brandt's claims. "Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC*, 592 F.3d at 764. To demonstrate the existence of a contract, a plaintiff must plead "facts indicating an offer, acceptance, and consideration." *Wait v. First Midwest Bank/Danville*, 491 N.E.2d 795, 799-800 (Ill. App. Ct. 1986).

Wayfair and Angi both argue that Brandt has failed to plead the terms of the contract at issue with sufficient certainty. Wayfair notes that Brandt attached an invoice to his complaint which "shows the products sold and that there would be installation, but not the specific parameters of the services to be provided." ECF 56 at 3. Angi contends that Brandt failed to "allege what contracts existed, what the terms of those contracts were, or how they were breached." ECF 53 at 3. Neither argument succeeds.

Wayfair is a furniture company. Angi supplies contractors who, *inter alia*, can be engaged through Wayfair's website to install Wayfair furniture. Brandt says that he paid for furniture from Wayfair, including installation service from Angi, and that furniture and contractors arrived. This is offer, acceptance, consideration, and performance by the plaintiff. *See Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 544 (Ill. App. Ct. 2021) ("[A] party's acts and conduct may be sufficient to objectively show that party's manifestation of assent."). Brandt alleges that the furniture arrived defective and that the installation services destroyed his apartment. This is breach and damage.

Both defendants argue that it is unclear what finer points of each contract they may have violated. That they are correct is immaterial. *Axiom Ins. Managers Agency, LLC v. Indemnity Ins. Corp.*, 2011 WL 3876947, at *12 (N.D. Ill. Sept. 1, 2011) ("A plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim."). These defendants may have specifically agreed not to install Brandt's items in a way that caused his apartment to flood with human waste; discovery will tell. For the moment, it is enough that Brandt alleges that he paid for undamaged furniture and successful installation and that these defendants provided neither.

**B. Negligence and Willful and Wanton Misconduct**

I group these two counts together because in Illinois, 'willful and wanton' denotes a *mens rea* which applies to a kind of aggravated negligence. *Davis v. Vill. of Maywood*, 240 N.E.3d 59, 67 (Ill. App. Ct. 2023) ("[W]illful and wanton misconduct is...essentially a hybrid between conduct that is considered negligent and conduct that is considered intentionally tortious.").[4] In order to make out a negligence claim, a plaintiff must allege a duty of the defendant on behalf of the plaintiff, breach of that duty, and harm suffered as a proximate result of the breach. *Id.* To make out the version of negligence known as willful and wanton misconduct, the plaintiff must also allege "either a conscious disregard for the plaintiff's welfare or a deliberate intention to harm." *Id.*

Angi and Wayfair advance more or less the same argument as to simple negligence. First, they contend, correctly, that where a contract claim is joined with a negligence claim, the duty which

---

[4] These claims usually come up in cases against municipalities, because in Illinois, they are immune to suit for ordinary negligence and can only be held liable when their conduct is willful and wanton. *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994). To what end Brandt is pleading willful and wanton misconduct against these companies is opaque to me, but the defendants have not objected to the claim's inclusion on that ground.

has allegedly been breached must exist independently of any duty imposed by the contract. If a plaintiff is complaining only that he "did not receive the benefit of [his] bargain, [that is] a harm which is appropriately remedied by bringing an action for breach of contract," not one sounding in tort. *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 185 (Ill. 1986). Wayfair and Angi assert that the only duties Brandt has alleged in his negligence count are their contractual ones. And second, both defendants contest whether they had any agency relationship to the contractors that went into Brandt's home. These arguments fail.

Brandt points to three duties in his negligence count: (1) "to install [the defendants'] products in a timely manner;" (2) to perform their duties "in a workmanlike manner" and "with workmanship that is customary and normal;" and (3) in installing them, to "not damage or create hazardous conditions resulting from their services." ECF 40 at 34. Angi and Wayfair are correct that the first duty is almost certainly part of any contract between themselves and Brandt, but they may be wrong about the second, and they are almost certainly wrong about the third.

An implied duty of workmanlike conduct or workmanship is ordinarily read only into construction contracts in Illinois. *Allstate Indem. Co. v. ADT LLC*, 110 F. Supp. 3d 856, 863 (N.D. Ill. 2015). It is unlikely that contracts involving the

installation of a toilet and vanity qualify as such. *Winston Network, Inc. v. Indiana Harbor Belt R. Co.*, 944 F.2d 1351, 1359 (7th Cir. 1991) ("The statute [defining construction contracts] applies to contracts '*for* the construction, alteration, repair or maintenance' of a structure, not to contracts '*having some connection with* the construction, alteration, repair, or maintenance' of a structure.") (quoting 740 ILCS 35/1) (emphasis in original). This is to say, defendants likely did not have an implied contractual duty to perform in a workmanlike manner. *Morrow*, 492 N.E.2d at 185. And as to the third duty Brandt alleges, it is implausible that defendants contracted with Brandt specifically not to destroy his bathroom and inundate his home with sewage. This is not a case where defendants simply failed to deliver Brandt the benefit of his bargain. Instead, he has "alleged a harm above and beyond disappointed expectations" and has "complain[ed] that the defects caused an accident which resulted in physical injury [and] damage to other property." *Id.*

Moreover, beyond the initial purchase of goods and installation services, Brandt has alleged a months-long back-and-forth wherein defendants plausibly assumed duties of care towards him. "Illinois law offers a voluntary assumption of duty theory," and recognizes that in situations "'in which a duty would not otherwise arise, a duty to act reasonably may be imposed when a

defendant negligently performs a voluntary undertaking.' *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768 (7th Cir. 2015) (quoting *Ordman v. Dacon Mgmt. Corp.*, 633 N.E.2d 1307, 1310 (Ill. 1994)). And Illinois has adopted a related section of the Second Restatement of Torts:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Frye v. Medicare-Glaser Corp*, 605 N.E.2d 557, 560 (Ill. 1992) (quoting Restatement (Second) of Torts § 323 (1965)).

The facts as pled, in which representatives of Wayfair and Angi botched an installation and then made promises and attempts to remedy the situation, all of which was done in such a way as to physically harm Brandt, plausibly make out ordinary and assumed duties of care, breach, and damage.

As for the defendants' agency relationships, Brandt's complaint is also sufficient. Wayfair seems to assume that the various handymen who arrived at Brandt's apartment were Angi's agents but disclaims any relationship to them, while Angi, even less realistically, writes that Brandt "does no more than simply

allege conclusory opinions that these individuals *could* be agents of Angi." ECF 53 at 4 (emphasis in original). But facts which indicate that the handymen *could* be agents of Angi is all Brandt needs. *Kostovetsky v. Ambit Energy Holdings, LLC*, 2016 WL 105980, at *7 (N.D. Ill. Jan. 8, 2016) ("All he must plead are facts that would plausibly give rise to an agency relationship."). If one purchases the services of a handyman associated with one business through the website of another, and then a handyman arrives at the time established during the purchase in order to do the work purchased, the "conclusory opinion" one might develop is that the handyman has come at the behest of the businesses. These facts, read in the light most favorable to Brandt, sufficiently allege an agency relationship.

The exact details of Wayfair's relationship to Angi and both businesses' relationships to the contractors will come out in discovery. And the same is true of the *mens rea* necessary for Brandt's aggravated negligence or 'willful and wanton' claim. Brandt has pled that in the course of his communications with these defendants, he let them know that he was suffering abjectly and that his physical welfare, perhaps fantastically, hinged on their following through on the duties they owed him. They did not do so, despite being aware of his situation, and he was harmed. Again, at this stage, that is enough.

### C. The Illinois Home Repair and Remodeling Act

Here, the defendants begin to gain the upper hand. The IHRRA, 815 ILCS 513/1 *et seq.*, aims to "increase consumer confidence, reduce the likelihood of disputes, and promote fair and honest practices" in Illinois by improving "communications and accurate representations between persons engaged in the business of making home repairs or remodeling and their consumers." 815 ILCS 513/5. The act requires, under certain circumstances, that persons "engaging in the business of home repair and remodeling," provide their customers with an informational brochure. 815 ILCS 513/20. Wayfair has argued that it was not required to provide a brochure because the value of Brandt's purchase was less than $1,000, while Brandt has argued that the damage resulting from his purchase was over that amount. They have engaged in this dispute because subsection 513/20(a) requires that a contractor provide a brochure and get a signed receipt for it on jobs over $1,000. It is a curious dispute, because contractors engaged on jobs worth less than $1,000 must *also* provide a brochure but can skip the receipt, and no-one seems to be arguing that Brandt received a brochure. 815 ILCS 513/20(b).

Angi, by contrast, has highlighted the operative part of the statute. The IHRRA only applies to work done on a "residence," which is defined as "a single-family home or dwelling or multiple-

family home or dwelling containing 6 or fewer apartments, condominiums, town houses, or dwelling units, used or intended to be used by occupants as dwelling places." 815 ILCS 513/10. The law then clarifies, "This Act does not apply to...repairs to dwellings containing more than 6 apartments or family units." *Id.* As Angi points out, Brandt failed to plead any facts which would put his home within the definition of residence, which means he has failed to state a claim in Count III.

**D. Intentional Infliction of Emotional Distress**

Here again defendants have the higher ground. Brandt has alleged inattention, ineptitude, and a certain amount of callousness on the defendants' parts, but the tort of intentional infliction of emotional distress ("IIED") requires more. To make out such a claim, "the defendant's conduct [needs to have been] extreme and outrageous," and go beyond "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Dipietro v. GATX Corp.*, 167 N.E.3d 247, 259-260 (Ill. App. Ct. 2020). And it is not enough "that the defendant acted with the intention of causing emotional distress," but rather, "the conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted).

As pled, the instant defendants mucked up both a job and Brandt's apartment, but Brandt has not alleged the kind of intent necessary to make out a claim of IIED. The best he can conjure is that when he told a customer service representative that he was disabled and unable to return the faulty vanity on his own, he was told he was "lazy" and to "get off his butt and return it." ECF 40 at 37. This is not enough. Brandt has pled that he, on May 31, 2023, "experienced a catastrophic sewage explosion," but his facts do not plausibly make out that either Wayfair or Angi *intended* to cause his toilet to detonate. *Id.* He has failed to state a claim for IIED.

**IV.**

Defendants' motion is granted as to Counts III and IV, which are dismissed without prejudice. It is otherwise denied.

**ENTER ORDER:**

Elaine E. Bucklo

**Elaine E. Bucklo**
United States District Judge
Dated: August 24, 2026